Charles Currie for Mr. Dickershaid. May it please the court. Good morning. Good morning. Quick story to illustrate how you can have diligence but inefficient diligence. Quick personal story. October 2014. Wife and I are going into the ocean. Wonder why no one else is in the ocean. It's a beautiful day, warm water. Once we get in there up to our necks, feet on the ground, we know why. Because it was a giant high tide and this was a giant low tide. We had no chance, no chance to ever get back to shore. It was 6 o'clock. We started swimming very diligently. But against that tide we had no chance and we weren't that great swimmers. It would have been diligent of you to find out why there was nobody in the water before you went in, wouldn't it? This may not be a very good illustration of your point, counsel. Well, you know what? It was late in the day. Your Honor, it was late in the day and it was, you know, there's a lot of other things to do than go in the ocean in October. So the point is that you can be diligent but be inefficient. We were saved by some lifeguards who were going off duty and they saw us, okay? Otherwise I wouldn't be here. So the point I'm trying to make is that Mr. Dickershade was a diligent son of a gun. He just wasn't very efficient. He didn't use the diligence when he should have. Well, you know what? If you'd used diligence you wouldn't have got in that water. Wasn't he warned three times that he was over the cubic space? Your Honor, when- That's a yes or no question. I'll answer the question there. They didn't take everything. They took his legal papers. Wasn't he warned three times that he was over the cubic space? According to the record, that's undisputed. That would be yes, right? Right. And he, as far as we know, could have consolidated his legal papers into the allowable space. But, Your Honor, maybe you don't know about this, but there's a Ninth Circuit case about this, about prisoners, prison guards confiscating materials. Maybe you don't know the meaning of the word diligent. No, we just have- Maybe that's the problem. I'm just talking about diligence and a pro se in prison person who isn't a lawyer. Have you shown any reason why he could not have consolidated and had his papers within the, what, how many ever allowable cubic feet? It was six, I think. I don't think that's the issue. I really don't. I think you're- But, you know, you don't get to decide that. Well- There's three of us who get to decide. I'm saying- You're applying a negligence- You may have to deal with that issue. Well, I'm trying to deal with it in that he's a prisoner and they warned him the same day they took it. That is in the record. Let me ask- The very same day. No, this is very- I've got to pound this. The very same day. I know that that's the record. But even without warning, was it known that there's a limitation of what one can have in a cell? There are so many limitations in prison. Eliminate the warning. Just was there known? Did he have to wait until he was warned before he knew he was overlimit on this record? You know, how do you measure this stuff? He's not a scientist. How do you measure- I mean, you've got- This is your life. You can ask me the questions if you want to, but if you don't answer the ones I ask you, you may not be happy with the result. I told you. There was a warning. There was a warning. But this man's life is on the line. We're talking about a technical thing. Well, it's serious. There's no doubt it's serious. But it's no more serious than it was when he was there. He knew about the limitation. He was warned, without a doubt. That record shows. And on that same day, as you say, they acted. But before he was warned, I'm asking you, on this record, didn't he know? I'm sure if he was warned, he knew about it. Counsel, let me ask you something slightly different than it actually may be helpful to your client. As I read 15 California Code of Regulations 3161, he was actually permitted to have an additional one cubic foot in addition to the six feet under the regulations. So the authorities may have been wrong. You found something that I didn't know about. Okay. Well, I'm trying to help you here. You are helping me. Okay. So does that make any difference? It does. Because we're talking about anyway technical, very technical violations. And courts have dealt, in this circuit, have dealt with technical violations and pro se people. This is a pro se person to the max. And it says courts have a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements. He didn't know what you just read. You didn't either. I didn't either. There you go. So, boy, you can't get any more technical than that, can you? The lawyer didn't even know it. And he didn't have a lawyer. I should have done some more research. I credit the court for doing it for me. But it's there. And this is his life. This is his only chance. I mean, how more important can you get than that? And then don't forget, I wrote in my brief, if this man didn't have bad luck, he wouldn't have any luck at all. B.B. King, right? He didn't. He had. Then he went to court and filed very diligently, three months after losing in the California Supreme Court, he filed in the federal court. Now, let's get to that because the federal district court judge had before him not just or the magistrate here because the magistrate wrote it up, not just a request for an attorney. Although, to tell you the truth, what's wrong with that? I need some time. I need some time to get an attorney. The court could have just said, all right, we'll stay and obey. You've got 60 days. Find yourself a lawyer. I don't understand why that's not an abuse of discretion for saying that. But let me focus on the fact that he also said, and I wrote it in my brief, he said, whether or not I get counsel, this is page 243 of my supplemental record, 243. Whether or not, he wrote this to the court, whether or not counsel is secured, the petitioner still has no other option. But to raise every available ground in collateral attack. Translated, I've got to go back and raise things that my state appellate judge didn't do. Still down and putting aside for a moment the extra foot. I gather your argument is, you know, this was a pro se guy. He acted as quickly as he could under the circumstances. Once he got the papers back, he promptly filed, et cetera, et cetera. You're saying he's entitled to equitable tolling. That's it. That's the simple. That's all we're talking about. So if the extra foot is what's required and they took it away from him, then your argument, I gather, would be he's entitled to it because he acted promptly once he got the papers back. Maybe I should sit down. That's up to you. Just don't let your boys grow up to be cowboys. Oh, I'm going to have to think about that one. Well, anyway. If you can guess, we've reviewed this case with some interest. Better than me. Yes, sir. Thank you. Better than me. Thank you. I'll sit down. Thank you. We'll see if you have some rebuttal time if you want it. We'll see what we do with this gentleman. Good morning. May it please the Court. Kenneth Burns, Deputy Attorney General on behalf of Respondent. First, in terms of Section 3161, which the Court discussed before, Judge Feist did cover this in his separate order when he adopted the R&R. It's at page 180 of the excerpts of record that I filed. There are two sets of excerpts in this case, which I know is a little bit confusing. But what Judge Feist noted was that although 3161 says what it says, what we don't know is how does it apply to this case. Why not? Why not? Because it was never brought up below. Does it matter? Here's a pro se guy. He got six cubic feet. He's entitled to one more. They took away his stuff that was included in that one more. That's not his fault, is it? It is his fault, Your Honor, in the sense that he did have three months. Before when counsel said that the material was seized on the day he was warned, that's not quite true. At excerpts of record 116, he was warned in June, three months earlier before when it was taken. So he had three months between June and September when it ultimately was confiscated. He had three months to either consolidate his property or, frankly, all he had to do, as the federal court noted, the district court noted, all he had to do was take out the federal petition out of the box. The federal petition is 86 pages. It's the first chunk of material in my excerpts of record. You can literally hold it with one hand. And that's what he should have done had he really wanted to diligently pursue his rights. I think the record, and earlier the court noted that he did file the federal petition on the day he got his box back. That's true, and that's to his credit. And I think the record shows that he wanted that box. What the record doesn't show is that he needed the box. And so there's a couple reasons for that. Number one, as I just said, he could have taken the previously prepared federal petition out. He had three months to think about this. Pretty simple. He could have taken it out and put it someplace else. He didn't do that. What you may want to consider is whether when we review it, do we look at what he could have done or do we look at what he was required to do? Well, Your Honor, I think that equitable tolling is an equitable concept. And I think out of fairness it requires what would a reasonably diligent pro per inmate do? A reasonably pro per inmate who knew that his papers were going to be confiscated. And you can't add that he knew and he didn't know until they told him what they were going to do and that he should reduce. Did he? He didn't know until he had the conversation, did he, on this record? They told him in June. They told him in June, break down property. He had three months. Well, in this case, I mean, the Supreme Court said in Holland that the diligent required is reasonable diligence, not maximum feasible diligence. Correct. So your position is that in this case, given these circumstances, that because he did not take out this pre-prepared paper, end of story? Well, that's not quite the end of the story, Your Honor, although I think that's a pretty salient part of it. I think one thing you have to remember also is that in addition to the one-year statute of limitations that AEDPA gave him, he also had another year because of the state court tolling. Right. And the other thing is when counsel was talking about this is this man's life, actually his sentence is almost up. He got sentenced to 24 years in prison nine years ago, and with the prison credits he's actually going to be walking the streets in just a couple years. Does that matter? No, Your Honor, but the point is that this case, it's been nine years since he's been sentenced. You know, the purpose of the AEDPA statute of limitations was to speed up habeas review, and as we sit here this morning, it's been nine years since he was sentenced. He had a year under AEDPA. He had a year of tolling. He had many months when he had his boxes, both before he voluntarily sent them to Arkansas and then he had after he got it back from Arkansas while he was waiting for the California Supreme Court to rule. He had his boxes for many months, and he just chose not to file on that time. If the state gives a warning based upon its understanding that the law is X but the law is Y, what are we to do with that? Well, Your Honor, even if let's assume that the boxes were taken in violation of California law. Let's assume that. The point is it wasn't impossible for him to timely file a federal petition. He filed three state court petitions without his boxes. Okay, but again, we're back to Holland again. It's not maximum feasible diligence. If he was focused on these papers that he thought he needed, and if he had the extra one cubic foot, we wouldn't even be talking about this because he filed promptly once he had this, right? That's true enough, but I don't think it's reasonable for him to think that unless I get that one box back with that 86-page petition, I can't do anything. That's what I don't think is reasonable, and I'm positive it's not diligence. He could have, as the district court pointed out, notwithstanding his separation from this kind of 86-page petition, which in all candor is nothing special. I mean, he could have gone to the prison law library, he could have filled out a form petition, and he could have sent it in all the months when he was litigating and trying to get the boxes. See, you keep talking about what he could have done, and I think you're right. Almost every time anything, anybody does anything, you can always look at it and say he could have and fill in the blank. What we have to concern ourselves with, unless you tell me otherwise, is what he was required to do under the circumstances. Isn't that what we have to look at? Yes, and I think, in my view, what I think is reasonable diligence is not what he did, and I don't think I'm trying to impute upon him or force upon him some maximum diligence standard or something that would be unreasonable. But if you know that the train is going to leave at 10 o'clock tomorrow morning, some people will go to the airport the night before, I mean, to get it the night before. Some people will leave home in time to get there at 10 o'clock. And the question is what were they required to do, and what he's required to do is be there at 10 o'clock. And in this case, on this record, his papers were compensated, weren't they? Yes, they were, but I think it was, number one, legitimate, because he failed to comply with the prison rules, number one. But number two. Well, maybe he did, maybe he didn't, with the one extra cubic foot. Well, again, the record is really silent on that. All the record shows is that there's a regulation that says that, but the record is not really clear whether or not. Is the state not bound by the regulation? The regulation applies. What we don't know is how it applies to the facts of this case, because the defendant never really raised it. What more do we need to know? If they didn't give him the one foot and he was entitled to the one foot, what more do we need to know? Well, I think what you need to know is that this guy could have filed the petition without his box. That's a different question. As far as the applicability of the one foot rig, what more do we need to know? Well, the regulation is there. I think what we need to know is was the foreign petition in the smaller box or the bigger box? Well, does it matter? I mean, here you arguably have a wrongful deprivation of these materials that should have been left, in which case I think you admit there would have been no issue because he promptly filed when he got it back. So I guess I'm troubled by the fact that the state says, well, we've got this regulation. Nobody brought it up. We're not bound by it, and we're going to stick it to this guy. All along he kept asking for his legal materials. So the state, if the state's following the regulation, knows it's unregulated, he should have got them back out of the one foot exception, shouldn't he? That's correct, and I'm not saying that we're not bound by the regulation. The point I'm trying to make is we don't know how that regulation pertained to the facts of this case. What I don't understand is what we don't know. I've asked you two or three different ways. What more do we need to know in order to know that the state violated the regulation? Well, maybe we need to know where the federal, which box the petition was in. Well, how does that make any difference? There were six feet he was entitled to. I think the state's admitted in the record that this extra material is 86 pages. That's not even close to a foot. No, it's not. So obviously it fits within the additional foot. So there was no question about what's included. All of his materials fit within seven feet. There's no question about it, is there? That's unclear to me. I don't know how much total material he had. They took away the six feet, right? He went through the six feet. They trimmed him down to six. They trimmed him down to six, correct. And he had 86 more pages that we all, I think, agree that in a cubic foot that easily fits. So they took away material improperly if he was entitled to seven feet. Assuming that that's true. I mean, again, see, I thought he did assume it was true. What are we missing here? Well, we don't know what happened. We do know what happened. They took away the materials. That's what he says. But I don't know that that's true. You don't admit that the materials were taken away? The materials were taken away. What we don't know is how much of the materials were taken away. We don't know which parts. They took away all his materials. That's in the record, is it not? I thought that they took away the excess. The excess. I thought that they limited him to six feet and they took away the excess. Okay, well, then he was entitled to an extra foot. And are we supposed to presume that he's going to bear the burden, as opposed to the State, when they took away more than six feet? I think that when you wait a couple of years to file a Federal petition after being advised by a Federal judge that there's a one-year statute of limitations, I think all reasonable diligence requires you to do. But didn't he ask for his legal materials back several times over that period? Yes, he did. And he was entitled to a foot's worth of stuff to include the legal material, that is to say the legal materials. Yes, he was. And the State didn't give it to him. So, again, is he the one that should bear the result of that or should the State bear the result of that? I think that, you know, to get equitable tolling, I think he has to be diligent. And I think that he has to know how to put himself in that position to begin with. And I think all he had to do was take out the petition. That's all he had to do was take it out. Or he could have even, again, I don't know that it was wrongfully taken. We're assuming that it was wrongfully taken, but I don't know that that's true. But even if it was true, he could have filed another petition. He could have gone to the law library. And I don't think – I think we have your – I think we have your position. But I think that when you say he could have taken it out, if he had known what was going to happen, that would be one set of circumstances. Here they gave him the warning and they took the papers all the same day. Isn't that so? No, it was three months later. No. When – well, maybe I'll look again. But I think what happened was he didn't know that his papers were going to disappear. And as soon as he got them back, he found and filed. Your Honor, if you look at the – That isn't what it shows? No. It shows that he was warned in June. All right. It shows that he was warned in June, and in September he was warned a second time and they were taking that day. But it wasn't like September came out of left field. September followed June three months earlier. He had three months after he was warned, and he did nothing during that time as far as we can tell. I think we have your position. Thank you. Thank you very much. Most of my colleagues have other questions. Sam? No. Want to – Don't go swimming with no one else. Okay. Don't go swimming without checking the lifeguard. Okay? All right. Case disargued is submitted.
judges: Sentelle, Farris, M. Smith